## L. H. HUMBERT, Appellant, v. T. J. LARSON, *et al.*

**Frand in Sale:** RESCISSION. In an action on notes given for the purchase of a stallion, defendants pleaded that plaintiffs made fraudulent representations as to the breeding qualities of the stallion, which he knew to be false, and that the horse was impotent. The evidence showed that there had been a previous sale of the stallion, and the purchaser had rescinded it because the stallion was not a sure foal-getter, as represented; that defendants learned of such sale soon after their purchase; that they went to plaintiff with the matter, and he offered to take back the stallion and return the notes, but wanted the horse tried on a two years' test. Defendants rescinded the contract at the end of the first year. *Held*, that the rescission was made in a reasonable time.

RESCISSION: *Court and jury.* The court is not justified in holding as a matter of law, that the rescission of a contract for the sale of a stallion for misrepresentation as to his breeding qualities is too late, by the fact that it was not made until seven or eight months after the buyer's suspicions had become aroused by the fact that the seller had been obliged to take back the stallion from a previous purchaser, especially where the seller stated, at the time of the sale, that he wanted the horse to be tried on a two years' test.

TENDER. A stallion died in a buyer's possession after he tendered him back to the attorney of the seller. The buyer retained possession because the attorneys claimed that the horse should have a two years' test as a foal-getter. *Held*, this tender was a sufficient performance of a condition precedent to a recission of the contract on account of misrepresentations as to the foal-getting qualities of the stallion.

PAROL VARIANCE. The rule excluding evidence contradictory of a written instrument, does not apply when fraud is the gravemen of the action or gist of the defense.

**Appeal:** OBJECTION BELOW. Where defendants do not specially plead a certain defense, but the case is tried without objection on

2   the theory that there is such an issue, and plaintiff asks a number of instructions in reference to it, the case will be treated on appeal as if the answer set out the defense.

*Appeal from Adams District Court.*—HON. W. H. TED-FORD, Judge.

SATURDAY, OCTOBER 17, 1896.

ACTION at law, upon three promissory notes, made and executed by the defendants, in payment for a certain stallion, purchased by them of plaintiff. Defense: Failure of consideration, and fraud prac-ticed upon them by the plaintiff. Trial to a jury. Verdict and judgment for defendants. Plaintiff appeals.—*Affirmed.*

*Dale & Brown* for appellant.

*Davis & Wells* and *W. S. Hefling* for appellees.

DEEMER, J.—This is the second time this case has been before us. The opinion on the first appeal will be found in 89 Iowa at page 258 (56 N. W. Rep. 454). A somewhat extended and correct statement of the issues will be found in this first opinion, and they need not be repeated here. It is sufficient to say, that after the case was remanded to the lower court, the plaintiff amended his petition, by including all the notes given for the stallion, and asked judgment for the full amount thereof. Otherwise, the issues remained the same as upon the first trial.

I. Appellant's first contention is that the court erred in its instructions to the jury on the subject of rescission, in this: that they were misleading, as applied to the undisputed facts of the case. No serious complaint is made of the abstract propositions of law announced in the charge, and if such complaint was made, it would be without merit.

The contention of appellant, as we understand it, is that there was such delay on the part of defendants, after they discovered the alleged fraud of the plaintiff, as that they cannot be heard to say they rescinded the contract of · purchase. Briefly stated, the defenses interposed by defendants were: (1) That there was a failure of consideration for the notes, because the stallion was of no value whatever for breeding purposes. (2) That plaintiff made certain fraudulent representations regarding the breeding qualities of the stallion, which he knew to be false and untrue; that the horse was barren and impotent, and of no value for breeding purposes; that the whole transaction connected with the sale of the animal was a fraud upon the defendants; and that they were damaged by reason thereof in the sum of the amount of the notes they gave to plaintiff. The defendants do not specifically plead that they rescinded the contract for this alleged fraud, but the case was tried without objection, upon the theory that there was such an issue, and no point is now made by appellant regarding this omission. All parties considered the question of rescission for the alleged fraud as one of the issues in the case, and the plaintiff asked a number of instructions with reference to the rights and duties of the defendants in making rescission. The case will now be treated as if the answer set forth this defense. The evidence shows that the plaintiff had sold the stallion to Wagner & Sexauer previous to his sale to defendants, and that he was obliged to rescind this sale and receive back the animal, because he was not a sure foal-getter, as represented. · It is claimed in argument that the defendants were informed of these matters some time in April or May of the year 1889, and that they did not offer to rescind their contract until about January 25, 1890; that by reason of their delay, they

elected to stand by and perform their contract; and that their rescission came too late. Counsel agree, that rescission for fraud must be made in a reasonable time, and that, if the article purchased be retained for an unreasonable length of time, the law will regard it as an acceptance, and a waiver of the right to return the property. They disagree upon the question as to who is to determine what is this reasonable time, and upon the effect to be given the evidence adduced, with reference to this matter. As to the first point in dispute, it is sufficient to say, that what is a reasonable time within which to return property, in order to accomplish a rescission for fraud, is a mixed question of law and fact, and no rule can be given which would be applicable to every state of facts. Each case must depend upon its own peculiar circumstances. The character of the property, the situation of the parties, and the circumstances existing at the time the attempt to rescind is made, must all be taken into account. There are cases, of course, where the delay may be so long that the court will, as a matter of law, consider the offer to rescind too late. In this case, the court submitted the matter to the jury, and virtually told them, that if they found that defendants discovered in April or May, of 1889, that the horse had been taken back from the first purchasers, by the plaintiff, because he was not a sure foal - getter, then the rescission made by them in January was too late. In answer to special interrogatories the jury found that the defendants did not learn of the fact that plaintiff received the horse back from the former purchasers because he was not a sure foal-getter, until some time after the commencement of this suit. The instructions, as we have already said, announced correct rules of law; and the dispute between the parties is narrowed down to the one inquiry, is the special finding to which we

have referred, without support in the evidence? We are satisfied that the defendants knew shortly after their purchase, that the horse had been sold to Wagner & Sexauer, and resold by them to plaintiff. But this knowledge would not justify a rescission. It should further appear that they knew he had been taken back because he was not a sure foal-getter. And such knowledge might not, of itself, be sufficient to require them to act; for, as we have said, much depends upon the character of the property, and the circumstances surrounding the transaction. Without quoting the evidence at length, it is sufficient to say that we think the jury were justified in making the finding they did,—that defendants did not know, until about the time of the bringing of this action, that the stallion was not as represented. They may have had their suspicions that the animal was not as sure a foal-getter as plaintiff had stated him to be. But they were fully justified, on account of representations made by plaintiff, in waiting for time to furnish more definite evidence. Plaintiff had stated when selling the stallion, that he could not tell in January, 1889, what the horse had done in 1888, for it was then too early in the season. He also represented to them, when he made the sale, that, "so far as he knew, the horse was a sure foal-getter." Defendants were not, under such circumstances, required to act upon mere rumors or suspicions. They were justified in waiting further devolopments. Moreover, the evidence shows, without dispute, that, after the defendants heard the rumors as to the return of the horse by the first purchasers, they went to appellant with the matter, and he, to allay their fears, offered to take back the stallion and return the notes. Again, there is evidence to show that plaintiff stated at the time he made the sale to the defendants that he wanted the horse to be tried on a two-years' test, because, the first year after

these Norman horses were imported, they were not so sure foal-getters as the second. For this reason, the two-years' test was provided for in the bill of sale, a copy of which will be found in the former opinion. We do not think we are justified in holding, as a matter of law, under these circumstances, that the rescission came too late.

It is also claimed by appellant's counsel that there is no evidence to warrant the finding that the rescission of the contract was made by reason of the alleged fraud in the sale. This position seems to be based upon a misapprehension of the record. There is evidence from which the jury may have found that the defendants offered to return the horse to an attorney representing the plaintiff, because he was not as represented. The evidence also tends to show that the attorney would not receive him, because he insisted upon the two-years' trial provided for by the bill of sale before referred to. The horse died in June, 1890. The defendants kept him from the time they offered to return him, until his death, at the instance and request of the plaintiff or his attorney, who claimed that he should have the full two-years' trial provided for in the bill of sale.

II. Plaintiff requested certain instructions, which were refused by the court, and error is assigned on the rulings. Such of these instructions as embodied correct propositions of law were given by the court in his charge to the jury. Others were erroneous, and still others were misleading. What we have said sufficiently indicates our views regarding the law of the case, and we need not more particularly refer to the charge of the court.

III. Appellant further argues, that the court erred in allowing certain evidence, over his objections, tending to contradict the written bill of sale. The record shows, that the court below did admit evidence

to prove the representations and statements made by plaintiff as an inducement to the sale. Under the issues in the case, this evidence was properly received. The defendants did not rely upon their bill of sale. Their defense was independent of it, and was based upon fraud. It is elementary, that the rule excluding evidence contradictory of a written instrument, does not apply when fraud is the gravemen of the action or gist of the defense. It is clear, that there was no error here.

IV. Some other errors are complained of, which we will not take the time to consider. What we have already said disposes of every controlling question in the case. The parties have had two trials, resulting in a verdict each time for the defendants. There is abundant evidence upon which to predicate a finding of fraud in the sale, and, as we have seen, the jury was justified in concluding that there was a rescission of the contract within a reasonable time after the discovery of the fraud by the defendants. The instructions, as applied to the facts of the case, were correct, and the rulings on the admission and rejection of testimony were not erroneous. We have, perhaps, considered questions which are not properly made by the assignment of error; but we do so in order to settle all matters in dispute, and thus end the case. It may not be inappropriate to say that the judgment should be affirmed, even if there was no rescission, or if the rescission was waived. The jury were told by the court that, if plaintiff made the representations as claimed, and they were false, and were known to plaintiff to be false at the time he made them, defendants would be entitled to recover of plaintiff, without rescission, the difference between the actual value of the stallion, in the condition he was in, as foal-getter and breeder, when sold, and what he would have been worth had he been as represented. The jury found

specially that the horse was of no value for breeding purposes, at the time of the sale. Neither these instructions, nor the special finding, are complained of, and it is apparent that, under them, the verdict should have been for defendants. Our conclusion is, that the judgment is right, and it is AFFIRMED.