THOMPSON *et ux.* v. HARDY *et ux.*

1. Under Civ. Code, §§ 1282-1285, relating to the rescission of contracts, a suit in equity to rescind a contract for the exchange of property, and to

recover the property exchanged, may be maintained on an offer of restoration of everything acquired by plaintiffs under the contract, accompanied with a tender into court, before trial of the action, of a good and sufficient deed to the property conveyed to plaintiffs, in return for the property which they are seeking to recover.

2. A verdict in an equity case, though merely advisory, adds great weight to the findings of the court in accordance therewith; and the Supreme Court will be very reluctant to reverse the findings on conflicting evidence, sustained by the verdict, unless the clear preponderance of the evidence is against such findings.

3. A representation by defendant that he had sold property, which he wished to exchange for plaintiff's property, for a certain amount of money, which representation finally induced plaintiff to make the desired exchange, was a representation of fact, and, when known by defendant to be grossly false, entitled plaintiff to a rescission of the contract.

4. The representation to plaintiff that he could obtain possession of hotel property, which defendant wished to exchange for plaintiff's farm, within 30 days, was a representation of a material fact, where plaintiff was induced to give up his farm for the sole purpose of engaging in the hotel business, and where defendant knew when he made the representation that there was an outstanding lease on the hotel, which would not expire for over a year.

5. The fact that a deed to property showed it to be subject to an outstanding lease did not estop the grantee, as against the grantor, from relying on the latter's representations as to the time within which he could obtain possession of the property, where the deed was executed by the grantor in another state, and placed upon record before it had been examined by the grantee, who, upon discovery of the falsity of the representation, promptly brought an action to rescind the contract.

6. In a suit to rescind a contract for the exchange of property on the ground of misrepresentations as to value, it was proper to find the respective values of the properties to be exchanged, in order to show the materiality of the representations, although there were no allegations as to such values in the complaint.

(Opinion filed January 25, 1905.)

Appeal from circuit court, Kingsbury county; Hon. JULIAN BENNETT, Judge.

Action by D. A Thompson and wife against Rufus L. Hardy and wife. From a judgment for plaintiffs, defendants appeal. Affirmed.

*W. A. Lynch* and *Lancaster & McGee,* for appellants.

*Hall, Lawrence & Roddle,* for respondents.

CORSON, P. J.   This is an action by the plaintiffs, as husband and wife, to rescind a conveyance of real estate made by them to the defendant Rufus L. Hardy in March, 1901. A jury was impaneled to try special issues, and returned special verdicts, which were, in substance, adopted by the court as a part of his findings of fact; and, such findings and conclusions of law being in favor of the plaintiffs, the defendants have appealed.

It is disclosed by the record in this case that in the fall of 1900 the plaintiff D. A. Thompson was the owner of a section of land in Kingsbury county, upon which he resided, and upon which there was a mortgage for $4,000, and that the defendant Rufus L. Hardy was the owner of a hotel in Bloomfield, Iowa, known as the "Hardy Hotel"; that negotiations were commenced in the fall of 1900 for the exchange of the farm by the plaintiff Thompson for the hotel owned by the defendant Hardy, but which resulted in nothing definite being agreed upon until some time in the winter of 1901, when, upon further negotiations, it is claimed by Thompson that Hardy represented to him that he had sold the hotel property for $14,000; that thereupon negotiations were continued or new negotiations opened in regard to the exchange of the farm with one Taylor, to whom

Hardy claimed to have transferred the hotel property, and Hardy undertook to effect an exchange of the properties between Thompson and the alleged new owner. In the new negotiations it was agreed that a mortgage for $4,000 should be placed upon the hotel property in favor of Hardy, as offset against the mortgage then outstanding on the farm of Thompson, and the properties were conveyed subject to the two mortgages. To carry into effect the agreement, it is claimed, Hardy took a reconveyance of the property to himself, and subsequently executed a deed to the hotel property to Thompson; Thompson in the meantime having conveyed the farm by deed to Hardy.

The grounds upon which the plaintiffs seek to rescind the contract, and compel the appellants to reconvey the property to them, are that Hardy falsely represented to the plaintiff Thompson that he had sold the property for $14,000, and that Thompson, if he purchased the hotel property, could obtain possession of the same by giving 30 days' notice to the tenant then in possession; that these representations were false, the hotel having been transferred for a much less sum, and that the hotel property was under a written lease executed by Hardy for a period of two years from August, 1900; that Hardy made these representations with intent to deceive and defraud Thompson; and that he knew they were false.

The court, in its findings, adopts, in substance, the special verdicts of the jury, and finds that the fraud practiced by said Hardy upon the plaintiffs consisted, in part, that the said Hardy represented to the plaintiff Thompson prior to the execution of the deed from Thompson to Hardy that the hotel property had been, prior to the execution of said deed, sold by

said Hardy for the sum of $14,000; that the statement so made by Hardy was material, and was influential in inducing the plaintiffs to deed the farm lands; that said statement was false, and was known to said Hardy to be false when he made such statement, it being true that said Hardy had sold the hotel property a short time prior for the sum of $4,000, and no more, all of which was well known to said Hardy when he made such representations; that plaintiff Thompson believed said Hardy when he made such representations, and relied upon the same, and was thereby induced to exchange said farm lands for said hotel property, the same being the sole consideration for such exchange; that such false representation made by the said Hardy to the said Thompson was made by the said Hardy with intent that it should be relied upon by the said Thompson, and with intent that it should influence and induce the said Thompson to make such exchange, and was so relied upon by said Thompson, to his damage. The court further finds that said fraud practiced by the said Hardy upon the plaintiffs, and which induced them to convey said lands, consisted, in part, that the said Hardy stated to the said Thompson that the said plaintiffs could have possession of the said hotel property upon 30 days' notice to the person in possession, which said representation was made by the said Hardy to the said Thompson prior to the said conveyance; that the said representation was material, and was false, and known to be false by the said Hardy at the time it was made, there being at said time in existence a written lease of the hotel property executed by the said Hardy, and the contents thereof known to him, by virtue of which the person in possession was entitled to hold possession thereof until August

20, 1902, and such lease could not be terminated by notice prior thereto; that said Thompson believed such representation made by said Hardy to be true, and that he would be able to get possession of said hotel property at the end of thirty days, and the said Thompson fully relied upon such representation, and was induced thereby to exchange said farm lands for said hotel property; that the said representation was made by said Hardy with the intent that it should be relied upon by the said Thompson, and with the intent that it should influence and induce said Thompson to make such exchange and that it was relied upon and acted upon by the said Thompson to his damage; that said farm lands of the plaintiff Thompson were of the reasonable value of $10,000 at the time of such transfer; that said hotel property was of the reasonable value of not to exceed $5,000 at the time of such transfer of such farm property; that the plaintiffs at the time of the commencement of this action, and at all times since, have stood ready and willing, and by their complaint therein did offer and tender into court for and in behalf of said Hardy, a good and sufficient deed of said hotel property conveying the same to the said Hardy, subject to the $4,000 mortgage thereon; that the said Thompson has tendered into court, and has filed with the clerk of the court, a good and sufficient deed, conveying the said hotel property to the said Hardy, subject to the mortgage thereon, and that the $4,000 mortgage upon said farm is wholly unpaid; that in the deed of said hotel property executed to Thompson, there was inserted in the same, at the direction of the defendant Hardy, and without the knowledge or consent of plaintiffs, or either of them, a clause to the effect that the deed was given subject to a lease terminating in August, 1902, which said deed was

placed on record by the agent of said Hardy without the same having in any manner been delivered or examined by the plaintiffs, or either of them; and that the said plaintiffs, or either of them, had no knowledge of such clause, or that such lease could not be terminated, until long after the execution and delivery of their deed conveying said farm lands to the said Hardy.

Upon these findings of fact the court concludes that there should be a decree ordering that said conveyance from the plaintiffs to said Hardy be canceled and set aside, and that title to said farm lands be revested in the plaintiff Thompson, subject to the said $4,000 mortgage, and that the title thereto be quieted in the said Thompson as against said Hardy and all persons claiming under him, and that said Hardy and wife be ordered to deliver to the clerk of this court a good and sufficient special warranty deed, executed by them to the said Thompson. reconveying the said farm property. It clearly appears from the findings of the court that the representations made by Hardy were false, and known to him to be false at the time they were made; that they were material; that plaintiffs were thereby induced to convey their farm lands in exchange for said hotel property under the belief that the hotel property was of equal value with the said farm lands, and that they could obtain possession of the same upon 30 days' notice; that said Hardy fraudulently caused to be inserted in said deed, without the knowledge of the plaintiffs, the clause declaring that the same was taken subject to the lease terminating in August, 1902, and had the same recorded before being examined by the plaintiffs.

It is contended by the appellants: "(1) The complaint

19 S. D.—7

does not allege that prior to the commencement of the action the plaintiff rescinded the contract with Taylor for the exchange of properties, and therefore does not state a cause of action." (2) There is no finding of fact that prior to the commencement of this action the plaintiff rescinded the contract with Taylor for the exchange of properties. Therefore the first and second conclusions of law are not justified or warranted by the findings of fact." In support of these propositions, appellants contend that, under sections 1282-1285 of the Civil Code of this state, a contract for the sale of property must be rescinded before an action can be maintained in court for the restoration of the property claimed by the plaintiffs; and the appellants cite a number of California authorities which they claim support the propositions made, but, in our view, they do not sustain the appellants' contention, in actions involving real property, requiring the cancellation of conveyances, and which requires the interposition of a court of equity. After an exhaustive review of the California decisions by the Supreme Court of California, that court, in Kelley v. Owens, 120 Cal. 502, 47 Pac. 369, 52 Pac. 797, says: "There are exceptional cases where restoration, or an offer to restore, before suit brought, is not necessary, * * * where, without any fault of plaintiff, there have been peculiar complications, which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties; and it will be found that such instances, or others similar to them in principle, are those to which the authorities cited by appellants generally relate. The substance of the distinction will be found to be based, not upon the form of the action,

but upon the difference between the cases which are within the rule, and those which, owing to peculiar facts, are exceptions to the rule. ·* * * Sections 3406-3408 of the Civil Code do not establish any new rule upon the subject.'' The sections referred to by that learned court are identical with the sections of the Code of this state upon the subject of rescission of contracts, and the sections in the Code of that state as well as of this state were copied from the proposed Civil Code of New York, constituting sections 838 to 841, inclusive, of that Code. In the note to these sections the commissioners preparing that Code, after citing a number of common-law cases, say: "This is undoubtedly a common law rule. But the rule in equity does not appear to have been so strict. An equitable action for rescission is governed by rules stated in the fourth division of this Code.'' The commissioners seem to recognize the jurisdiction of courts of equity to rescind contracts in proper cases, and the distinction between the rescission of a contract at common law and an action to rescind a contract in equity. The provisions of the Code were not intended to establish a new rule. They simply embodied the principles of the common law as they then existed, and left the rescission of contracts and the cancellation of deeds to courts of equity when the case is such as to require the exercise of their jurisdiction. One of the leading heads of equity jurisprudence is the rescission of contracts, and the cancellation of deeds and other instruments. In Pomeroy's Equity Jurisprudence, in section 112, the learned author specifies as his sixth division of remedies peculiar to courts of equity: "Remedies of rescission or cancellation or those by which an instrument, contract, deed, judgment, and even sometimes a legal relation itself subsisting

between two parties, is for some cause set aside, avoided, re-scinded, or annulled. This remedy, like the preceding, is sometimes conferred as the sole and final relief needed by the plaintiff, but is often the preliminary step to a more effective remedy by which his primary right is declared or restored." In Mut. Life Ins. Co. v. Pearson, 114 Fed. 395, the United States Circuit Court for the District of Massachusetts, in speaking upon this subject, says: "The inherent power of a court of equity to set aside a contract obtained by fraud is ancient, familiar, and elementary; and the only serious question raised by the demurrer is whether, upon the state of facts set forth in the bill, the complainant has an adequate and complete remedy at law." The Court of Appeals of the state of New York, in discussing this question in Gould v. Bank, 86 N. Y. 75, after discussing the general principles of a rescission of contracts as laid down in our Code, says: "But the defrauded party need not rescind, and sue in an action at law for the consideration parted with upon the fraudulent contract. He may bring an action in equity to rescind the contract, and in that action may have full relief. Such an action does not proceed as upon a rescission, but proceeds for a rescission. In such a case it is sufficient for the plaintiff to offer in his complaint to restore to the defendant what he has received, and the rights of the parties can be fully regulated and protected in the judgment to be entered. Such was the case of Allerton v. Allerton, 50 N. Y. 670. If this had been an action in equity to rescind the contract, the court could have done equity between the parties, and so molded its judgment as to accomplish that result. It could if needful, have brought into the litigation matters pertaining to the trust created by Starin for plaintiff's benefit,

and, to that end, could have ordered that Starin and the trustee be made parties. This action was brought as an action at law; no mention being made in the complaint of the compromise agreement, or of the $25,000 paid to the plaintiff. A purely legal defense was set up. It was tried as an action at law, and no motion was made to convert it into an equity action. It is idle to say that the distinction between legal and equitable actions has been wiped out by the modern practice. It is true that all actions must be commenced in the same way, that in every form of action the facts constituting the cause of action must be truly stated, that fictions in pleadings have been abolished, and that both kinds of actions are triable in the same courts. But the distinction between legal and equitable actions is as fundamental as that between actions ex contractu and ex delicto, and no legislative fiat can wipe it out. Reubens v. Joel, 13 N. Y. 488; Goulet v. Asseler, 22 N. Y. 225. At any rate, the difference between an action to rescind a contract and one brought, not to rescind it, but based upon the theory that it has already been rescinded, is as broad as a gulf. They depend upon different principles, and require different judgments. Here the tender of money into court at the close of the trial would have been sufficient, if this had been an equitable action for a rescission, and relief consequent thereon." It will be observed in that case that the court, notwithstanding it recognized the general rule applicable to the rescission of contracts at common law, still recognized a distinction between rescission of a contract and "an action in equity to rescind" a contract, and in the latter action to secure full relief. The law laid down by the learned Court of Appeals of New York was approved by this court in Johnson v. Burn

side, 3 S. D. 230, 52 N. W. 1057, and seems to be sustained by the great weight of authority. Allerton v. Allerton, supra; Vail v. Reynolds, 118 N. Y. 297, 23 N. E. 301; Thayer v. Knote, 59 Kan. 181, 52 Pac. 433; Jandorf v. Patterson, 90 Mich. 40, 51 N. W. 352; Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533; Nelson v. Carlson, 54 Minn. 90, 55 N. W. 821. If the Supreme Court of California has by its decisions established a contrary rule, which we question, we must decline to follow its decisions upon this subject, and adhere to the rule as established by the Court of Appeals of New York, approved by our own court in the case above cited, which recognizes the distinction existing between a rescission under the Code, and an action in equity to rescind.

In the case at bar the plaintiffs, in their complaint, offer to restore to the defendants everything required by them under the contract; and the court finds that they have brought and tendered into court before the trial of the action a good and sufficient deed to convey said hotel property to said Hardy, subject to the mortgage against the same. We are of the opinion that the offer of the plaintiffs, in their complaint, with the presentation of a duly executed deed to the court, constitutes a full compliance with the rule as applied to actions in equity for the purpose of rescinding a contract.

It is further contended by appellants that the evidence was insufficient to justify the findings of the court, but, in our opinion, this contention is untenable. As before stated, the case was tried to the court, and certain special issues were submitted to a jury, which found in favor of the plaintiffs on all the issues; and the special verdicts were, in effect, adopted by the court, and made a part of its own findings in the case. The

evidence was conflicting, but, after a careful examination of the same, we are unable to say that the evidence preponderates against the findings of the court. Of course, the verdicts of the jury were merely advisory to the court, and these verdicts will not be reviewed by this court, as this court is governed by the findings of the trial court in equity cases. But the fact that the jury found upon all the issues in favor of the plaintiffs adds greatly to the weight of the findings of the court upon these issues, and we should be very reluctant to reverse the findings of the trial court when they are sustained by the verdicts of the special jury, in a case of conflicting evidence, unless we were satisfied that there was a clear preponderance of the evidence against the findings of the court. In this case the court's findings, in our opinion, are not only not against the clear preponderance of the evidence, but they seem to be sustained by the preponderance of the same. The evidence is voluminous, and, in our opinion, no useful purpose would be served by its reproduction in this opinion; and it must suffice to say that the evidence satisfied us, as it did the trial court, that Thompson was induced by the misrepresentations of the defendant Hardy that he had recently sold the property for $14,000, and that the plaintiffs could obtain possession of the same upon 30 days' notice, to exchange his farm, worth at least $10,000, subject to a $4,000 mortgage, for the Hardy hotel found by the court to be of a value not exceeding $5,000, and upon which, under the agreement, Hardy was authorized to place a mortgage of $4,000 before the exchange of the same for the farm lands, and that Hardy made these representations for the purpose and with the intent to deceive the plaintiffs, and that they did deceive the plaintiffs; that

they were material; and that, had it not been for these fraudulent misrepresentations, the plaintiffs would not have entered into the contract.

It is strenuously contended by the appellants that the representation in regard to the sale of the property for $14,000 was not a representation of a fact, but the expression of an opinion, only, as to the value of the property. We do not so regard it. It was the representation, in our opinion, as to a material fact, which naturally had a great influence in inducing the plaintiff Thompson to part with his farm lands. It would seem from the evidence that the defendant on several occasions during the fall of 1900 called the attention of the plaintiff Thompson to the advantages that would inure to him by exchanging his farm lands for the hotel property, but that Thompson was not inclined to make the exchange until informed by Hardy that he had sold the property for $14,000, and that subsequent to such statement Thompson consented to make the exchange. In Rasmussen v. Reedy, 14 S. D. 15, 84 N. W. 205, this court held that an expression of a mere opinion might not constitute such a representation as would entitle a party to a rescission of a contract, but, when the representations were as to a fact material in determining the value of the property or its boundaries, and falsely made, such representations would constitute a ground for a rescission; and the court further held that false material statements as to the boundaries constituted such a fraudulent misrepresentation as would entitle the plaintiff to maintain the action. Certainly the statement by Hardy that he had sold the property for $14,000 was the statement of a material fact, which influenced Thompson in exchanging his farm lands for the hotel prop-

erty; and if, as found by the court, the hotel property was not of a value exceeding $5,000, and upon which a mortgage had been placed of $4,000, there can be no question of its materiality, and, being untrue, and known to be untrue by the defendant Hardy, the conclusion of the court that Thompson was entitled to a rescission of the contract was clearly justified. Dorr v. Cory, 108 Iowa 725, 78 N. W. 682; Simar v. Canaday, 53 N. Y. 298, 306, 13 Am. Rep. 523; Smith v. Countryman, 30 N. Y. 656; Weeks v. Currier, 172 Mass. 53, 51 N. E. 416; Moon v. McKinstry, 107 Mich. 668, 65 N. W. 546; Stochl v. Caley, 48 Neb. 786, 67 N. W. 783; Brett v. Van Auken, 99 Iowa 553, 68 N. W. 891; Van Epps v. Harrison, 5 Hill (N. Y.) 63, 40 Am Dec. 314; Zang v. Adams, 23 Colo. 408, 48 Pac. 509, 58 Am. St. Rep. 249; Henderson v. Henshall, 54 Fed. 320, 4 C. C. A. 357; Page v. Parker, 43 N. H. 363, 80 Am. Dec. 172.

It is further contended by the appellants that the alleged representation that the plaintiff could obtain possession of the property on 30 days' notice was also the expression of an opinion, and not material; but, in our view, that statement was of a very material fact, as Thompson had given up his farm apparently for the sole purpose of engaging in the hotel business, and the fact that he could obtain possession of the hotel, as stated by Hardy, within 30 days, would necessarily tend to induce him to enter into the contract, and was intentionally made by Hardy for the purpose of so inducing him to enter into the contract without the full knowledge that the tenant had a lease of the property until August, 1902. It is further contended by appellants that Thompson, having accepted a deed with the clause above referred to in regard to the lease, is now estopped from relying upon the representations of Hardy in

relation thereto; but clearly there is no merit in this contention, under the evidence and the findings of the court, for it clearly appears that the deed was executed by Hardy and wife in Iowa, and placed upon record before it had been examined by Thompson, and that upon the discovery of that fact, as well as the misrepresentation as to the sale of the property, Thompson promptly instituted this action to rescind the contract. In our opinion, therefore, the court was clearly correct in its conclusions of law, and in the judgment entered thereon.

It is further contended by the appellants that the findings of the court as to the value of the farm property and the hotel property were not justified by the pleadings, as there were no allegations in the complaint as to the value of these properties; but this contention is untenable, for the reason that in order to show the materiality of the representation, it was proper for the court to find the respective values of the properties to be exchanged.

The judgment of the circuit court and order denying a new trial are affirmed.